STATE EX REL. ALFORD, Respondent, vs. THORSON, Appellant.

*May 2—June 11, 1930.*

32

For the appellant there was a brief by *Hill, Beckwith, MacIntyre & Harrington* of Madison, and oral argument by *D. D. MacIntyre.*

For the respondent there were briefs by *La Follette, Rogers & Roberts* of Madison, and oral argument by *Philip F. La Follette.*

FOWLER, J. The defendant groups his objections to receipt of the testimony under four heads: (1) It was taken under abuse of process and its receipt is contrary to public policy. (2) Receiving it would violate defendant's constitu-

tional rights by taking his property without due process of law. (3) It was received on the erroneous theory that it constitutes admissions of the parties to the action. (4) It is secondary evidence and due diligence was not used to procure the best evidence.

(1) While the facts are stated on which the defendant claims the testimony of the witnesses was procured in the first instance through abuse of process, it seems sufficient to say upon this point that if it was illegally procured this affords no reason for its exclusion. 4 Wigmore, Evidence (2d ed.) § 2183. This point was recently discussed by Mr. Justice STEVENS in *Ware v. State,* 201 Wis. 425, 230 N. W. 80, and we see no reason for further discussion of it. The only exception to the rule is where officers of the government violate the defendant's constitutional rights by obtaining evidence by illegal search or seizure or by some sort of compulsion or duress, and the exception applies only in the federal courts and in this and a few other states. There was no violation of any constitutional rights of the witnesses here, and if there were it is not apparent why any one but the witnesses has right to raise the objection.

As to the public policy involved, there is no statute prohibiting its receipt. If objectionable on that ground it is for like reason that testimony given before a grand jury is not receivable, and in such case its exclusion is limited to situations in which such testimony is inadmissible. The John Doe proceeding is at most no more under the ban of secrecy than is a proceeding before a grand jury.

No cases or texts or other authorities are cited or found to the point that John Doe proceedings are secret, nor are any cited or found to the point that they are on a parity with grand jury proceedings. But assuming without deciding that they are on such parity, we do not find that the testimony involved is inadmissible. In *Murphy v. State,* 124 Wis. 635, 102 N. W. 1087, the receipt of testimony taken

before the grand jury is considered and discussed. It is there stated (p. 653) : "An examination of the adjudications leads us to the conclusion that evidence by grand jurors of the statements made before them by witnesses and parties is competent upon trials in courts, and that the weight of authority sustains the practice whenever the trial court deems it necessary for the ascertainment of truth and in furtherance of justice." Leading authorities are there cited in support of the statement, including 4 Wigmore, Evidence (2d ed.) §§ 2360–2363. The statutory provisions relating to the matter, secs. 255.25, 255.26, and 255.27, are there considered, and it is stated (p. 654) that they no way "indicate that it was thereby intended to interfere with the established practice, which was to the effect that it is proper to examine a grand juror upon a trial in court as to what a witness testified to before the grand jury, when not objectionable under the ordinary rules of evidence, and when the ends of justice require it." It was held that the trial court erred in holding "that the evidence of grand jurors, the district attorney, and the minutes of the grand jury's proceedings could not be received as original testimony when it is material to the issues involved in the trial." The reasons for the rule as to secrecy are quoted on page 652 of the opinion from *Comm. v. Mead,* 12 Gray (Mass.) 167, and are stated more particularly in 4 Wigmore, Evidence, § 2360. Of these reasons, as stated by Wigmore, only one, the privilege of the witness before the grand jury, has any bearing on the question before us. It should be noted that the secrecy is the privilege of the witness, and consequently only the witness has right to object to removal of the ban. The witnesses are "guaranteed temporarily against compulsory disclosure of their testimony, because otherwise the state could not expect to secure ample evidence for the information of the grand jury. The secrecy is the state's inducement for obtaining testimony. . . ." It is pointed out that

the privilege is not the grand juror's or the state's but that of the witness and rests upon his consent. It is further pointed out that the secrecy is temporary only; that permanent secrecy is more than is necessary to render the witness willing to testify; that the limit of secrecy is passed when the grand jury has finished its work, and that "there remain, therefore, on principle, no cases at all in which the privilege of the witnesses . . . should be deemed to continue" thereafter. "This is, in effect, the law as generally accepted today." The common statement of the law is that "disclosure may be made whenever it becomes necessary in the course of justice." 4 Wigmore, Evidence (2d ed.) § 2363.

Of course, if a grand juror may testify to what a witness testified before the grand jury, the evidence of the reporter who transcribed the witness's testimony may be received with at least equal reason. We conclude that the testimony objected to is not inadmissible on the ground that it was given in a John Doe proceeding.

(2) The ground of the second objection above stated is that right to office is a property right, and that property cannot be taken except by due process of law. Granted. But the point at issue is whether the testimony was competent, and admission of incompetent evidence is not denial of due process. *State v. Owens*, 124 S. C. 220, 117 S. E. 537. The defendant grounds this claim on the fact that he had no opportunity to cross-examine the voter. But however potent the want of cross-examination may be to exclude receipt of the voter's testimony, it only affects its competency as evidence, and does not at all affect the process by which the court acquired jurisdiction herein.

(3) That the testimony was received on an erroneous theory is perhaps true. But it is a theory adopted by this court over sixty years ago and it has been consistently adhered to ever since. The leading case on the subject is *State ex rel. Hopkins v. Olin,* 23 Wis. 309, which involved an action to determine whether a county seat should be re-

moved. Persons who voted at the election were called to testify and declined to answer on the ground of self-incrimination. A witness was then permitted to testify that he heard each of these persons say that he voted, that he voted for removal, and that he was foreign born and had not declared his intention to become a citizen. Want of such declaration rendered the persons unqualified to vote and their votes void and defeated the proposition for removal. Objection was made there as here that the testimony was hearsay. The opinion states (p. 319) : "To a certain extent this may be so; but the well settled and uniform practice is to allow it in contests of this nature. *People v. Pease,* 27 N. Y. 45, and authorities there cited. The reason of the rule, or rather of the exception, is that a person who has voted at an election is always considered as a party when the result of the election is in controversy, and on that ground his declarations voluntarily made are admissible. It is considered to be a question between the voter and the party questioning his vote, and not merely between the party holding the office and him who claims it." The rule is of very ancient origin. It has been applied in the House of Commons' contests from earliest times. It was adhered to in *State ex rel. Leonard v. Rosenthal,* 123 Wis. 442, 102 N. W. 49, and *State ex rel. Hallam v. Lally,* 134 Wis. 253, 114 N. W. 447. The objections to the rule are considered and discussed in both these cases. While the court conceded they are not without force, they are considered as overcome by the reasons for the original holding and the fact that the rule has so long obtained. In *State ex rel. Bell v. Conness,* 106 Wis. 425, 82 N. W. 288, the rule is also recognized, although the testimony there offered was rejected on the ground of its indefiniteness as to the nature of the statements and the time at which they were made.

(4) The basis of this objection is that the testimony of the witnesses themselves given in court on the trial would be evidence of higher grade than their sworn testimony in

the John Doe proceeding, and their attendance in person might have been obtained by the plaintiff by due diligence. It is plain as a matter of common sense that the sworn testimony in the John Doe proceeding, when given, was of as high grade as their sworn testimony given in person upon trial herein would have been. It was given under the same solemnities and sanctities and subject to the same penalties. It could not have been disputed upon trial without subjecting the voter to a conviction of perjury committed upon one hearing or the other. Technically, however, it is secondary evidence in the sense that a deposition is secondary as compared to testimony of the witness given in court upon the trial. It must be conceded also that the relator might have procured the depositions of the voters either by commencing his suit during the last school year and regularly noticing their examination, or if he had not yet decided to bring the suit, by perpetuating their testimony, upon notice to defendant, under sec. 326.27, Stats. It is also plain, or at least to be presumed, that he could have ascertained their residences and taken their deposition out of the state in time to have it for use upon the trial. Even had the defendant had opportunity to cross-examine the witnesses in the John Doe proceeding, under the ruling in *Inda v. State,* 198 Wis. 557, 224 N. W. 733, their testimony would not have been receivable under sec. 325.31, providing for receipt of testimony given upon another trial where the opposite party had opportunity to cross-examine and the witness is out of the state. Still, upon the reason upon which the testimony is receivable at all, that the voter is considered a party, all this is immaterial. The declarations of a party against interest are admissible although he is not present at the trial. If the reason is to be recognized at all it may as well be given full recognition. In none of the three Wisconsin cases above cited subsequent to the *Olin Case, supra,* was any showing made that attendance of the voters upon the trial could not be pro-

cured. It was assumed that evidence of their statements was admissible as admissions of a party. In the *Conness Case* and the *Rosenthal Case, supra,* it is held that receipt of testimony as to the voter's statements is within the discretion of the court. If it is discretionary to receive the unsworn statement of the voter, it is certainly not an abuse of discretion to receive his sworn testimony. We conclude that the testimony of the voter was properly received in evidence.

*By the Court.*—The judgment is affirmed.