Voluntary Assignment of H. M. Warner & Co.: Warner and another, Appellants, vs. Gregory and others, Trustees, Respondents.

*November 12—December 9, 1930.*

For the appellants there was a brief by *Stephens, Slette-land & Sutherland* of Madison, attorneys, and *Grady, Farnsworth & Walker* of Portage of counsel, and oral argument by *Daniel H. Grady*.

For the respondents there was a brief by the *Attorney General, Joseph E. Messerschmidt,* assistant attorney general, and *Fred Risser,* district attorney of Dane county, and oral argument by *Mr. Messerschmidt*.

FAIRCHILD, J.   The actual inquiry now is, Does this permission granted to the district attorney to examine the books constitute an invasion of the rights of the protesting individuals by compelling them to submit to an unlawful search and seizure, although the ultimate result may be the introduction in evidence of some portion of the records here sought?

This state has accepted the doctrine that courts must consider the means used in obtaining evidence and not receive it if obtained by violation of constitutional rights of an accused.   *Hoyer v. State,* 180 Wis. 407, 193 N. W. 89.   In practice the result is the same to one accused of a crime whether he be obliged to supply evidence against himself or whether such evidence be obtained by officials in an illegal search of his premises and seizure of his private papers.   In either case he is of course the unwilling source of the evi-

dence. *Gouled v. U. S.* 255 U. S. 298, 306, 41 Sup. Ct. 261. While this rule may at times seem to give an undue advantage to the guilty, its purpose is to safeguard the rights of the innocent against an overriding in the furtherance of annoying and persecuting prosecutions. This rule was the result of a reaction to the cruelties and injustice of permitting punishment to be inflicted on persons suspected of crime in order to compel them to admit their guilt. Fear or the hope of reward under that method often induced confessions and evidence misleading and false. "So deeply did the iniquities of the ancient system impress themselves upon the minds of the American colonists that the states, with one accord, made a denial of the right to question an accused person a part of their fundamental law." *Brown v. Walker,* 161 U. S. 591, 597, 16 Sup. Ct. 644.

However, where, as here, the books and records are in the possession of others than the accused, whether placed there by force of circumstances or in whatever way, so long as it is not under the ban of the guaranties, then the constitutional rights are not violated by a proper use of them in an investigation of alleged criminal acts. The fact that evidence is wrongfully obtained from the possession of the accused by some device not amounting to a violation of this constitutional right in no way prevents its use. *Ware v. State,* 201 Wis. 425, 230 N. W. 80.

There are cases holding that private papers in the custody of a receiver in bankruptcy are not so out of the control of one accused of crime, who has by order of a court of competent jurisdiction put them in the possession of the receiver, as to be subject to subpœna and to be used as evidence in criminal prosecutions against him. These cases have been analyzed and are not easily distinguishable if in fact they are distinguishable at all. They run counter to the rule that books, papers, and private documents of a bankrupt turned over to a trustee may be used as evidence against a bankrupt

in a criminal proceeding and are not controlling. The rights of one who by force of circumstances in response to impulse or dictates of conscience, by accident or inadvertence, places in the keeping of an assignee or trustee in bankruptcy, or other person, incriminating evidence, are not violated by compelling the assignee or trustee, or person in possession, to produce such evidence in criminal proceedings. Mr. Justice HOLMES in *Johnson v. U. S.* 228 U. S. 457, 33 Sup. Ct. 572, said:

"A party is privileged from producing the evidence but not from its production. The transfer by bankruptcy is no different from a transfer by execution of a volume with a confession written on the fly-leaf."

Mr. Chief Justice TAFT said in *Dier v. Banton,* 262 U. S. 147, 43 Sup. Ct. 533:

"We agree . . . and hold that the right of the alleged bankrupt to protest against the use of his books and papers relating to his business as evidence against him ceases as soon as his possession and control over them pass from him by the order directing their delivery into the hands of the receiver. . . ."

The trustees in this case do not occupy such a confidential relationship to the assignors that they cannot be compelled to answer with respect to any matters of fact within their knowledge relating to the commission of a crime, and there is no reason suggested on the basis of confidence that would deprive the district attorney of the right to examine the books.

The appellants are not in this matter to be dealt with in any personal way. No compulsion is to be applied or used to affect their volition in the matter; nothing is to be taken from their possession, their persons are not to be subjected to any procedure, no question is to be asked that they are obliged to answer. This is not a situation where the sus-

pects may be induced by fear or hope to make a statement or produce a private paper; the state is not approaching them nor attempting an entrance which will in any way affect the right of privacy. It is acting within constitutional permission in seeking information from sources other than the suspected individuals; from sources, so far as they are concerned, disconnected from them to the extent that the examination of the books and papers causes no interference with or disturbance to them or their affairs. The records are within the reach of the state; the securing of the information as planned in no sense of the language used in the provisions of the constitution is an invasion on the part of the state of the sanctity of a man's home or the privacies of his life.

*By the Court.*—Order affirmed.